**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-2715-WJM

AARON AGUIRRE-GARAY,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as
Warden of the Denver Contract Detention Facility, *et al*.

     Respondents.

---

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Aaron Aguirre-Garay's Verified Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion") (ECF No. 4). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); George Valdez, in his official capacity as Field Office Director of ICE's Denver Field Office; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); David Venturella, in his official capacity as Acting Director of Immigration and Customs Enforcement ("ICE"); and Todd Blanche, in his official capacity as Acting Attorney General of the United States (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 11.)  Aguirre-Garay filed a reply.[1]  (ECF No. 12.)

---

[1] Aguirre-Garay notably filed his reply without first seeking leave of Court.  (*See* ECF No. 9 (noting "the Court will determine whether it will require a Reply from the Petitioner" upon receipt of the Response).)  Given, however, that the Government's response cites the Tenth Circuit's intervening precedent in *Santillan Quiroz v. Mullin,* --- F.4th ----, 2026 WL 1876709, at

For the following reasons, the Petition is granted, and the Motion is denied as moot.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Aguirre-Garay is a noncitizen who has lived in the United States since 2001. (ECF No. 1 at ¶ 3.) He married in 2008 and owns a business, which enables him to provide for his wife and U.S. citizen children. (*Id.* at ¶¶ 3, 33.) Aguirre-Garay has no criminal history that would subject him to mandatory detention under §1226(c). (*Id.* at ¶ 3.) Nevertheless, ICE detained him in May 2026 without providing a bond hearing, claiming that he is subject to mandatory detention under 8 U.S.C. § 1225(b). (*Id.* at ¶ 3, 33.) In the Petition, Aguirre-Garay challenges the legality of Respondents' invocation of § 1225(b). (*See generally* ECF No. 1.) Among other relief, he asks the Court to issue a writ of habeas corpus requiring Respondents to immediately release him from custody or, in the alternative, to schedule him for a custody hearing pursuant to 8 U.S.C. § 1226(a) before this Court within seven days. (*Id.* at 22.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in

---

*1 (10th Cir. June 30, 2026), and Aguirre-Garay did not have an opportunity to address the same authority before filing his Petition, the Court finds it in the interests of justice to consider his reply.

violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

Aguirre-Garay claims that his mandatory detention under § 1225(b) violates the Immigration and Nationality Act ("INA") (Count I), the INA's implementing regulations (Count II), the Administrative Procedures Act, 5 U.S.C. § 706(a) *et seq.* ("APA") (Count III), and his Fifth Amendment Due Process rights (Counts IV, V).  (*See generally* ECF No. 1.)  The Court need only reach Quimi-Arellano's claims that his re-detention violates the INA and his due process rights to resolve the Petition.

### A.    INA Violation

As to Aguirre-Garay's statutory claim, the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin,* ---- F.4th ----, 2026 WL 1876709, at *1 (10th Cir. June 30, 2026) is dispositive.  There, the Tenth Circuit considered "whether § 1225(b)(2)(A) or §1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since."  *Id.* at *2, *4.  Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[2] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)."  *Id.* at

---

[2] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)."  *Id.* at *5 n.6.  But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Quimi-Arellano]."  *Id.*

*5.[3]

The material facts here are indistinguishable from those summarized in *Santillan Quiroz.*  Like the § 2241 petitioner in that case, Aguirre-Garay was detained in the interior of the country in May 2026, after having entered the United States approximately 25 years ago.  Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Aguirre-Garay.

## B.    Fifth Amendment Violation

Aguirre-Garay also claims that Respondents have violated his procedural and substantive due process rights by relying on an inapplicable statute as authority for his detention.  (ECF No. 1 at ¶¶ 50–59.)  Though the Tenth Circuit ultimately did "not determine . . . whether the Government's position is unconstitutional" in *Santillan Quiroz,* the Court also finds its discussion of the doctrine of constitutional avoidance persuasive to the disposition of Aguirre-Garay's Fifth Amendment claims in this case. 2026 WL 1876709, at *17.

As further support for its resolution of the statutory interpretation question before it, the Tenth Circuit considered the following:

> The Due Process Clause of the Constitution forbids the
> Government from "depriv[ing]" any "person ... of life, liberty,
> or property, without due process of law."  U.S. Const.
> amend. V.  "Freedom from imprisonment – from government

---

[3] The Tenth Circuit's reasoning is notably consistent with the numerous other decisions the undersigned has reached in the very recent past.  *Cf. Juarez-Bibiano v. Baltazar,* 2026 WL 1893397, at *2–*3 (D. Colo. July 1, 2026); *Garcia Lozano v. Mullin,* 2026 WL 1091266, at *2–*4 (D. Colo. Apr. 22, 2026); *Pal v. Lyons,* 2026 WL 937962, at *2–*4 (D. Colo. Apr. 7, 2026); *Saini v. Baltazar,* 2026 WL 1091263, at *2–*4 (D. Colo. Apr. 22, 2026); *Temaj Lopez v. Baltasar,* 2026 WL 628199, at *2–*4 (D. Colo. Mar. 6, 2026); *Singh v. Baltasar*, 2026 WL 601950, at *1 (D. Colo. Mar. 4, 2026); *Hernandez v. Baltazar,* 2026 WL 507518, at *4 (D. Colo. Feb. 24, 2026); *Garcia Abanil v. Baltazar,* 817 F. Supp. 3d 1148, 1155–57 (D. Colo. 2026); *Morales Lopez v. Baltazar*, 2026 WL 25161, at *4–5 (D. Colo. Jan. 5, 2026).

4

> custody, detention, or other forms of physical restraint – lies
> at the heart of the liberty that [this] Clause protects."
> *Zadvydas* [*v. Davis*], 533 U.S. [678,] 690 [(2001)].  Due
> process requires that, whenever the Government detains
> somebody, it must have a good reason for doing so.  *Id*.  If
> the detention is civil and nonpunitive, like the immigration
> detention here, that reason must rise to the level of a "strong
> special justification."  *Id.*  Adopting the Government's
> interpretation of § 1225(b)(2)(A) would pose grave
> constitutional problems because there is little justification, let
> alone a strong one, for detaining every one of the millions of
> unadmitted noncitizens in our country.

*Id.* at *16.[4]

Here, Aguirre-Garay contends—and the Court agrees—that Respondents have circumvented their constitutional obligation to justify his detention with a "special, narrow, and non-punitive purpose[]" by "jail[ing] him pursuant to the wrong statute . . . ." (ECF No. 1 at ¶ 59.)  Indeed, Respondents have provided *no* justification for Aguirre-Garay's continued detention aside from their erroneous reliance on the mandatory detention statute.  By the same token, Respondents have failed to adhere to the prescribed regulatory and statutory procedures for demonstrating Aguirre-Garay's detention is justified.  *See also Garcia Abanil,* 817 F. Supp. 3d at 1158 (concluding failure to provide individualized bond hearing prescribed by § 1226 necessarily violated petitioner's due process rights).

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest."  *Sosa v. De Anda-Ybarra,*

---

[4] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process.  In that regard, our discussion of constitutional avoidance sounds in substantive due process."  *Id.* at *16 n.12.  The Court makes the same assumption for the purposes of resolving the Petition.

2026 WL 1453999, at *2 (D.N.M. May 22, 2026).  Together, these wrongs constitute violations of Aguirre-Garay's substantive and procedural due process rights.

## C.    Remedy

The Government submits that, "if the Court does grant the Petition, the appropriate relief would be an order directing a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge within a reasonable time."  (ECF No. 8 at 2.)  The Court acknowledges that it has previously ordered bond hearings in lieu of immediate release under circumstances nearly identical to those raised in the Petition.  However, for two reasons, it no longer considers a bond hearing to be an adequate remedy to redress the violations discussed herein.

First, at least one other district court in this Circuit has persuasively written that, "since Petitioner's detention under § 1225(b)(2)(A) is void *ab initio,* immediate release is the appropriate remedy to address this deprivation of liberty and restore him to the *status quo ante*."  *Sosa,* 2026 WL 1453999, at *3.  The *Sosa* court reasoned: "[H]ad Petitioner's initial detention accorded with due process, he would have been entitled to a bond hearing," but "a bond hearing cannot retrospectively cure a due process violation stemming from detention without the statutorily required exercise of discretion."  *Id.* That is, "[u]nder INA regulations, a bond hearing occurs only *after* [ICE] has made its 'initial [discretionary] decision to detain'—it is not itself an initial custody determination but an act of '*re*-determination.'"  *Id.* (quoting *Tumba v. Francis,* 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025)).  Thus, while immediate release cannot cure Aguirre-Garay's roughly two-month long loss of liberty, it is the "remedy that comes the closest to doing so."  *Sosa,* 2026 WL 1453999, at *3.

6

Second, this Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Aguirre-Garay's immediate release.[5]

### IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 9) is MADE ABSOLUTE and

---

[5] In *Santillan Quiroz,* the Tenth Circuit contemplated in a footnote that, on remand, the district court should "order the Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him." 2026 WL 1876709, at *17 n.13. In this Court's view, it is somewhat ambiguous whether this language means that the Tenth Circuit views release as contingent on the Government's failure to provide a bond hearing, or a bond hearing and release as equal, alternative remedies. In the absence of clear guidance, this Court will continue to order immediate release in the first instance under appropriate circumstances, unless and until the Tenth Circuit holds otherwise.

Aguirre-Garay's Petition (ECF No. 1) is GRANTED;

2.     The Court GRANTS this relief to Aguirre-Garay pursuant to Claims I, II, IV, and V of the Petition.  It does not reach the merits of Claim III;

3.     The Motion (ECF No. 4) is DENIED AS MOOT;

4.     **By no later than this Thursday, July 9, 2026,** Respondents shall IMMEDIATELY RELEASE Aguirre-Garay on his own recognizance, along with all his personal belongings, and they shall facilitate Aguirre-Garay's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

5.     **No onerous conditions of release shall be unilaterally imposed by Respondents on Aguirre-Garay**, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

6.     Respondents are ENJOINED from re-arresting or re-detaining Aguirre-Garay unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified pursuant to 8 U.S.C § 1226(a).  At any such bond hearing, Respondents shall bear the burden of proof, and Aguirre-Garay shall be allowed to have counsel present.  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.     During such periods of time as Aguirre-Garay remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or

8

causing the removal or transfer of, Aguirre-Garay from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

8.      Should Aguirre-Garay believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **August 4, 2026**.  Respondents shall file a response by no later than **August 25, 2026**, and Aguirre-Garay shall file a reply by no later than **September 8, 2026**; and

9.      Judgment shall enter in Aguirre-Garay's favor and against Respondents on **July 21, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 7th day of July, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge